IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SANDRA HAYDEE ROMERO PEREZ

Plaintiff

v.

U.S. DEPARTMENT OF JUSTICE,
FEDERAL BUREAU OF PRISONS,
et al.

Defendant

**Civil No. 10-1441 (SEC)**

**OPINION AND ORDER**

Pending before this Court is Defendants United States Department of Justice and Federal Bureau of Prisons' ("BOP") (collectively "Defendants") Motion for Summary Judgment (Dockets ## 16 & 17), and Plaintiff Sandra Haydee Romero-Perez's ("Plaintiff") opposition thereto (Dockets ## 20 & 28). After reviewing the filings, and the applicable law, Defendants' motion for summary judgment is **GRANTED**.

**Procedural Background**

On May 21, 2010, Plaintiff filed the present suit against Defendant and Lt. Daniel Rivera ("Rivera") under Title VII, alleging sexual harassment at the workplace. In the complaint, Plaintiff, a correctional counselor at the Metropolitan Detention Center, Guaynabo, Puerto Rico ("MDC Guaynabo"), alleges that she was sexually harassed by Rivera. On December 7, 2010, Defendants moved for summary judgment, and Plaintiff timely opposed. On April 11, 2011, default was entered against Rivera for failure to answer or otherwise plead. Docket # 26.

**Civil No. 10-1441 (SEC)**                                                                                                          2

**Standard of Review**

*FED. R. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(quoting Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once

**Civil No. 10-1441 (SEC)**                                                                 3
_____

the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . .Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence"); Medina-Muñoz, 896 F.2d at 8 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

**Applicable Law and Analysis**

The relevant uncontested facts are as follows. Plaintiff is an employee at the BOP since November 23, 1993. SUF ¶ 7. She currently serves as a Correctional Counselor at the MDC Guaynabo. Id. When she started her employment at the BOP, Plaintiff was provided with the Standards of Employee Conduct; the Acknowledgment of Receipt was signed by Plaintiff on April 18, 2007. Id. at 8. The BOP has adopted, disseminated, enforced, and taught a comprehensive Sexual Harassment prevention policy. Id. at 34. Moreover, the Agency's Discrimination and Retaliation Complaints Processing policy in effect at the time strictly forbids retaliation. Id. Additionally, both Plaintiff and Rivera attended yearly Correctional Training Annual-BOP trainings which emphasize the process to report sexual harassment. Id. at 35. Also, the Agency's Standards of Employee Conduct, P.S. 3420.09, of which Plaintiff was aware, mandates reporting sexual harassment. Id. at 36.

**Civil No. 10-1441 (SEC)**  4

On May 19, 2009, Plaintiff filed a Formal Grievance with the BOP. Id. at 1.[1] According to Plaintiff, on said date, at approximately 7:30 a.m., she entered Housing Unit 3-C and observed Rivera sitting in the officer's station which she utilizes as a work station. Id. at 9. Plaintiff alleges that when she entered the office to store her purse, Rivera was sitting with his legs spread open. Id. Plaintiff further avers that Rivera had his left hand on his upper thigh, his right hand was rubbing his crotch area, and he asked her "What's wrong, you don't like this?" Id. She contends that she responded by stating "this is going to end, you are not going to do this anymore." Id. Plaintiff explained that such statement meant that she was going to report his conduct to her supervisor, Unit Manager Angel L. Morales, Jr. and to the Union President, Jorge L. Rivera. Id. Although Plaintiff alleges that witnesses were present, she indicated she does not know whether they witnessed her interactions with Rivera. Id.

Plaintiff further alleged that on May 16, 2009, she passed Rivera in the 3-C Housing Unit and Rivera's arm brushed her shoulder. Id. at 10. She indicated that she did not believe Rivera's brushing of her shoulder was an assault on her person, but asserts that his actions were an attempt to sexually harass her. Id. Plaintiff admits she did not report this alleged incident to any management official, her supervisor, or other staff member. Id.

Based on Plaintiff's allegations, the Agency responded by convening and conducting a Threat Assessment, and referring the matter to the Office of Internal Affairs in Washington, D.C. for investigation. Id. at 11. In a sworn statement provided to the Internal Affairs investigator, Rivera indicated that on May 19, 2009, he was seated in the Officer's Station in Unit 3-C reviewing and signing log books when Plaintiff entered to store her purse. Id. at 12.

---

[1] Local Rule 56(b) provides that a motion for summary judgment be supported by a statement of facts, set forth in numbered paragraphs, and supported by record citations as required by Local Rule 56(e). Defendants did not provide a record citation for the second to fifth sentence of their statement of fact. Accordingly, said information is disregarded for purposes of the present motion.

**Civil No. 10-1441 (SEC)**                                                                 5

Rivera indicated that, when Plaintiff placed her purse in the desk, she stated "these inmate bitches, seem like they hear through their pussies." Id. According to Rivera, he told Plaintiff that she should be professional and he could not believe the words coming out of her mouth, and Plaintiff responded by stating: "Deal with that." Id. Rivera indicated that he did not interact with Plaintiff for the remainder of his shift that day. Id. at 13. Another employee who was at that location was not close enough to hear the conversation between Rivera and Plaintiff. Id.[2] He denied ever making any sexually explicit comments or gestures towards Plaintiff, including placing his hands on her or rubbing his crotch, and stated that he has always acted in a professional manner. Id.

Pursuant to Rivera's statement, on May 16, 2009, he was assigned to the morning shift as Activities Lieutenant from 6:00 a.m. to 2:30 p.m. Id. at 15. He stated that that, at approximately 8:45 a.m., he was exiting Housing Unit 3-C when he noticed Plaintiff entered the Unit with her purse. Id. Rivera indicated that he went to the Lieutenant's Office to check the Unit Roster, which revealed Plaintiff was scheduled to work from 7:00 a.m. to 3:30 p.m. Id. He then sent an e-mail to Unit Manager Angel Morales, Plaintiff's supervisor, informing him about the time when Plaintiff arrived at work. Id.

According to Rivera, on May 20, 2009, prior to conducting the Threat Assessment, he asked Morales whether he had informed Plaintiff about his e-mail reporting the time of her arrival on May 16, 2009. Id. at 15. Morales told Rivera that he had told Plaintiff about Rivera's e-mail. Id. As a result, Rivera believed Plaintiff was retaliating against him for reporting her tardiness. Id. He offered to take a polygraph examination. Id.

---

[2] Although Defendants proffer that "Rivera indicated that Unit Officer Edgardo Velázquez was in the office, but did not hear the Plaintiff's comments due to his distance of some 40 feet," such information is not supported by the accompanying statement. As such, it must be disregarded when ruling on the present motion.

**Civil No. 10-1441 (SEC)**                                                                                                   **6**

Based on Rivera's affidavit, the OIA Investigator conducted a follow-up interview with Plaintiff on August 28, 2009. Id. at 16. In her follow-up interview, Plaintiff alleges that, on May 16, 2009, she first encountered Rivera while entering the sallyport of the housing unit. Id. Plaintiff indicated that, on that same date, she exited the unit and did not return until 10:00 a.m., when she encountered Rivera sitting at the desk with his legs wide open rubbing his crotch area. Id. In contrast, in her first Affidavit, Plaintiff's only allegation regarding Rivera's conduct on May 16 was the allegation that he brushed her shoulder with his arm. Id.  In fact, Plaintiff alleged Rivera sat with his legs open and rubbed his crotch on May 19, 2009, but not on May 16, 2009. Id.

Additionally, in her follow-up interview, Plaintiff for the very first time indicated that in February 2009, she was in the elevator when Rivera pressed his chest and crotch area against her abdomen area. Id. at 17. Plaintiff indicated that she asked Rivera to keep his distance. Id. According to Plaintiff, there were three staff members on the elevator, but the only staff member she could identify was Disciplinary Hearing Officer, Juan Segarra-Bassat. Id. Plaintiff asserted that when she exited the elevator on this date, she reported Rivera's conduct to her supervisor Morales, and that Morales telephoned Rivera and instructed him to leave Plaintiff alone or he would face serious repercussions. Id. She indicated that she had no additional conduct to report as it related to Rivera. Id. She also denied the use of profanity in the presence of Rivera, and making statements to the effect that "these inmates bitches, seem like they hear through their pussies." Id. Plaintiff declined to take a polygraph examination. Id.

In his follow-up affidavit, Rivera indicated that he did not recall ever having any contact with Plaintiff in an elevator in February 2009, and that he never had any physical contact with Plaintiff, nor had he ever pressed, touched, or rubbed his chest or crotch area against her. Id. at 18. He did recall, however, an incident in May 2008, when Plaintiff told him "Tú no sirves," in the presence of an inmate, as he entered an elevator. Id. Rivera indicated that he did not

**Civil No. 10-1441 (SEC)**                                                                                            7

respond to Plaintiff since an inmate was present. Id. He indicates that he spoke with Morales, Plaintiff's supervisor, about her comments and indicated he felt disrespected by Plaintiff. Id. Moreover, Rivera admitted he saw Plaintiff on May 16, 2009, but denied that he brushed against her, or having any contact with her. Id. Lastly, Rivera indicated that after he departed from the 3-C Housing Unit at 8:45 a.m. on May 16, 2009, he did not return to the unit on that day, as stated by Plaintiff, nor did he see her for the remainder of that day. Id.

The Warden at MDC Guaynabo at the time, Anthony Haynes, received the memorandum from Associate Warden Jeffrey Foster, regarding the alleged harassment, he convened a Threat Assessment, and took steps to ensure that Plaintiff and Rivera were placed on separate shifts. Id. at 20.[3] Warden Haynes indicated that on May 19, 2009, the Union President approached him with a formal grievance related to alleged incidents of harassment. Id. at 19 & 21. According to Haynes, he informed Rivera that he was going to convene a Threat Assessment, issue a Cease and Desist order, and refer the matter to the Office of Internal Affairs. Id. Warden Haynes further attested that, at that time, the Union President wanted him to sign the complaint; however, Haynes informed the Union President that he had not received information from the Threat Assessment Team and it would be prudent to wait until the Threat Assessment Report was submitted prior to attempting resolution. Id. Haynes indicated there were no attempts by the Union President to informally resolve the matter. Id.

On May 19 and 20, 2009, respectively, Plaintiff and Rivera were issued referrals to the Agency's Employee Assistance Program. Id. at 22. On May 20, 2009, a Threat Assessment

---

[3] Warden Haynes first learned of Plaintiff's allegations of sexual harassment against Rivera on May 19, 2009, when he was approached by Foster, who indicated that he received a report from Plaintiff stating that she was being harassed by Rivera. Id. Warden Haynes indicated that he instructed Foster to acquire a memorandum from Plaintiff. Id.

**Civil No. 10-1441 (SEC)**                                                                                               8

Team was convened. Id.[4] On May 27, 2009, a Cease and Desist letter was issued, informing Rivera that, based on Plaintiff's allegations of harassment, he had to make every effort to avoid being in her presence whenever possible. Id. at 23. He was further instructed to avoid engaging in any conversation with Plaintiff unless it was related to their duties, and if he was engaging in any inappropriate behavior, he should cease and desist from the same. Id.

On May 28, 2009, Plaintiff submitted a memorandum to the Warden requesting a change in her shift, in order to comply with the Agency's Cease and Desist Orders. Id. at 24. The Warden instructed Associate Warden Foster to determine a schedule that would be best for Plaintiff in order to facilitate her request, who noted Plaintiff would be working 2:30 to 10:30 p.m., with the same days off (Sunday and Monday), until the case at the Office of Internal Affairs was completed. Id.

In a Memorandum dated June 20, 2009, the Union representing Plaintiff invoked arbitration. Id. at 2. On July 8, 2009, the Federal Mediation and Conciliation Service contacted the parties and submitted a list of arbitrators to the parties. Id. at 3. On April 8, 2010, the parties and witnesses convened for the arbitration proceedings. Id. at 4. Pursuant to the Arbitrator's preliminary statements, the arbitration was designed to address a number of issues, including the preliminary issue of arbitrability, issues regarding discovery, testimony on the merits of the case and, if necessary, damages. Id. The first issue the arbitrator heard was related to the issue of arbitrability, and both parties examined and cross examined witnesses regarding

---

[4] The Threat Assessment Team consisted of Associate Warden Foster, Javier Matos, Attorney, Mr. Carlos Merced, Union Representative, Morales, Unit Manager, Edgardo Serrano, Captain, and Deanna R. Roerick, Employee Services Manager. Id. Defendants proffer that the Threat Assessment Team concluded there appeared to be no evidence to substantiate workplace violence of a sexual nature, that the matter should be referred to the Office of Internal Affairs for further investigation, and that Cease and Desist letters should be issued. They fail to provide specific record citations in the 15-page document submitted in support thereof. As such, said proposed fact is not properly supported by the record.

**Civil No. 10-1441 (SEC)**                                                                 9
_____

this matter. Id. At the close of this portion of the testimony Mendoza Toro, who represented Plaintiff in the matter, asked for a recess in order to confer with her client. Id. Upon returning to the hearing room, Mendoza Toro indicated that her client (Plaintiff) wished to withdraw her grievance. Id. at 5.[5] The Arbitrator confirmed Mendoza Toro's request and inquired as to any objections regarding withdrawal of the grievance; there were no such objections and the matter was adjourned. Id. at 6.[6]

**Applicable Law and Analysis**

*Exhaustion of administrative remedies*

The First Circuit has recognized that "exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress." Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 77 (1st Cir. 1997) (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992) (superseded on other grounds)). When Congress has remained silent on this issue, however, courts have more latitude in dealing with exhaustion questions. Id. Title VII requires an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination. See 42 U.S.C. § 2000e-5(f). The exhaustion of administrative remedies, however, is not a jurisdictional prerequisite to filing a Title VII claim in federal court. Vera v. McHugh, 622 F.3d 17, 30 (1st Cir. 2010)(citing Federique-Alexandre v. Dep't of Nat'l & Envtl.

---

[5] When opposing Defendants' motion, Plaintiff failed to note that a party's denial or qualification of a proposed fact must be strictly limited to the issue therein raised. Plaintiff, instead, submitted additional facts unrelated to Defendants' proposed averment of fact. Local Rule 56(c), requires that, if a nonmoving party includes any additional facts when opposing a motion for summary judgment, such facts must be in a separate section, set forth in separate numbered paragraphs, and supported by a specific record citation. The First Circuit has repeatedly held that when the parties ignore the Local Rules, they do so at their peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000). Therefore, any additional facts provided by Plaintiff when denying or qualifying Defendant's SUF must be disregarded by this Court.

[6] See footnote 2.

**Civil No. 10-1441 (SEC)**                                                                                       10

Res., 478 F.3d 433, 440 (1st Cir. 2007). As such, it is subject to equitable defenses. Fernandez v. Chertoff, 471 F.3d 45, 58 (2d Cir. 2006). Specifically, exhaustion is not required where the administrative remedy is inadequate because the agency lacks the authority to provide the type of relief requested, such as when the agency lacks institutional competence to resolve the particular type of issue presented, *i.e.*, the constitutionality of a statute. Portela-Gonzalez, 109 F.3d at 77 (citing McCarthy, 503 U.S. at 146-48); see also Chertoff, 471 F.3d at 58. A court may also consider relaxing the rule when unreasonable or indefinite delay threatens to unduly prejudice the subsequent bringing of a judicial action; when "the situation is such that 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim;'" or "if the potential decisionmaker is biased or can be shown to have predetermined the issue," rendering agency proceedings futile. Portela-Gonzalez, 109 F.3d at 77 (citing McCarthy, 503 U.S. at 147-48).

Despite the foregoing, "in a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door." Colon v. Mills, 646 F. Supp. 2d 224, 234 (D.P.R. 2009) (citing Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005)). That is, the plaintiff must adequately show why exhaustion should be waived. The First Circuit has noted that "[a] pessimistic prediction or a hunch that further administrative proceedings will prove unproductive is not enough to sidetrack the exhaustion rule." Portela-Gonzalez, 109 F.3d at 78. In order to properly claim futility, a plaintiff must show that all reasonable possibilities of adequate administrative relief have been effectively foreclosed, in other words, "that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision." Id. at 78-79 (citing Smith v. Blue Cross & Blue Shield United, 959 F.2d 655, 659 (7th Cir. 1992)).

The record clearly shows that Plaintiff raised her claims of discrimination under the negotiated grievance procedure, and on June 20, 2009, the Union invoked arbitration on her

**Civil No. 10-1441 (SEC)** 11

behalf. See SUF ¶ 3. Federal law and EEOC regulations set forth special rules for discrimination claims brought by federal employees covered by collective bargaining agreements. Frasure v. Principi, 367 F. Supp. 2d 245, 252-253 (D. Conn. 2005) (citing Wright v. Snow, No. 02-7615, slip op. at 4 (S.D.N.Y. Aug. 25, 2004)). Under the Federal Labor Management Relations Act, a federal employee may raise claims of discrimination under a negotiated grievance procedure or in a Title VII complaint, but not both. Id. (citing 5 U.S.C. § 7121(d)); see also Vinieratos v. Dep't of Air Force, 939 F.2d 762, 768 (9th Cir. 1991); Sierra-Perez v. USA, 779 F. Supp. 637, 643 (D.P.R. 1991). Once the employee chooses either route, "she must then exhaust that administrative remedy before pursuing her claim in court." Principi, 367 F. Supp. 2d at 253. This choice "between the statutory scheme or the negotiated grievance process is an irrevocable one." Id.; see also Vinieratos, 939 F.2d at 768. In this case, Plaintiff elected to pursue a union grievance procedure when she timely filed a grievance in writing in accordance with the negotiated grievance procedure. See 5 U.S.C. § 7121(d). As a matter of fact, on April 8, 2010, the parties convened for arbitration proceedings, and a hearing was held regarding the issue of arbitrability, during which the parties examined and cross examined witnesses. See SUF ¶ 4. On that date, nevertheless, Plaintiff informed the arbitrator that she wished to withdraw her grievance. Id. Thus she abandoned the grievance procedure at its early stages.

In her memorandum in opposition to Defendants' motion, Plaintiff argues that she voluntarily withdrew her grievance procedure because the BOP was obstructing and delaying the process, the process was burdensome and prejudicial, and the litany of appeals would have taken years to exhaust. Docket # 20, p. 9. She does not, however, provide a statement of additional facts to support the arguments therein set forth, such as Rivera's alleged history of harassing conduct, the BOP's alleged obstruction of the grievance proceedings or the alleged effects such actions had on her health and work conditions.

**Civil No. 10-1441 (SEC)**                                                                                      12

As previously explained, a plaintiff must demonstrate why exhaustion should be waived, and "[a] pessimistic prediction or a hunch that further administrative proceedings will prove unproductive is not enough to sidetrack the exhaustion rule." <u>Portela-Gonzalez</u>, 109 F.3d at 78. More so when the allegations are not properly supported by evidence. This is further compounded by the fact that the record shows that the administrative process was underway and Plaintiff abandoned the same during the first step of the arbitration proceedings. In <u>McKart v. United States</u>, 395 U.S. 185, 193 (1969), the Supreme Court explained that one of the primary purposes of the exhaustion doctrine is "the avoidance of premature interruption of the administrative process." Consequently, allowing a party to seek judicial recourse without first exhausting her administrative remedies weakens agency autonomy and contravenes judicial efficiency. <u>See</u> <u>Portela-Gonzalez</u>, 109 F.3d at 80. Accordingly, this Court finds that there is no indication that full exhaustion would have caused undue prejudice, irreparable harm, or unusual hardship of any sort to Plaintiff. Therefore, we find that Plaintiff failed to exhaust administrative remedies, and is precluded from filing the present suit.

*Claims against Rivera*

This Court notes that the First Circuit recently affirmed that there is no individual employee liability under Title VII. <u>Fatini v. Salem State College</u>, 557 F.3d 22, 30 (1st Cir. Feb. 23, 2009); <u>see also</u> <u>Acosta v. Harbor Holdings & Operations, Inc.</u>, 674 F. Supp. 2d 351, 373 (D.P.R. 2009). Therefore, "Title VII addresses the conduct of employers only and does not impose liability on co-workers…." <u>Fantini</u>, 557 F.3d at 31 (citing <u>Powell v. Yellow Book U.S.A., Inc.</u>, 445 F. 3d 1074, 1079 (8th Cir. 2006). Accordingly, Plaintiff's claims against Rivera are **DISMISSED with prejudice**.

**Civil No. 10-1441 (SEC)** 13

**Conclusion**

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED**. Plaintiff's claims against Defendants are **DISMISSED without prejudice**.[7] Her claims against Rivera are **DISMISSED with prejudice**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 28th day of April, 2011.

*S/Salvador E. Casellas*
Salvador E. Casellas
U.S. Senior District Judge

---

[7] In the majority of cases dismissal for failure to exhaust will be without prejudice and not an adjudication on the merits. Velazquez v. Davila, No. 08-1131, slip op. at 23 (D.P.R. Feb. 20, 2009) (citing Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275 (1st Cir. 1999); Deniz v. Municipality of Guaynabo, 285 F.3d 142 (1st Cir. 2002). The Supreme Court's decision in Costello v. United States, 365 U.S. 265, 285-88 (1961), confirmed that dismissal for failure to satisfy a precondition to suit should not bar a subsequent suit in which the defect has been cured. See Pisnoy v. Ahmed, 499 F.3d 47, 61 (1st Cir. 2007) (citing Lebron-Rios v. U.S. Marshal Serv., 341 F.3d 7, 13 (1st Cir. 2003) (dismissal of suit for failure to exhaust administrative remedies would not preclude later suit if plaintiffs exhausted remedies).